UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHARD A. WIERENGA,

       Plaintiff,                              Case No.  1:12-CV-0022

v.                                                 HON. ELLEN S. CARMODY

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant,
                                      /

## **OPINION**

This is a social security action brought under 42 U.S.C. **§** 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Richard Wierenga seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) under Title II of the Social Security Act. On April 27, 2012, the parties agreed to proceed before the undersigned for all further proceedings, including an order of final judgment. (Dkt. #9).

Section 405(g) limits the court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. The Commissioner has found that plaintiff is not disabled within the meaning of the Act during the time period within which plaintiff would be eligible to receive benefits. The court has thoroughly reviewed the record and the filings by the plaintiff and the Commissioner and, for the reasons stated below, concludes that the Commissioner's decision is supported by substantial evidence.  Accordingly, the Commissioner's decision is **affirmed**.

**STANDARD OF REVIEW**

The court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1998). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)

(citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was born on March 4, 1956, and was 51 years old on his alleged disability onset date. (Tr. 68, 569).  He completed his formal education when he graduated high school (Tr. 597) and throughout his career was employed as a janitor, groundskeeper, and machine operator tender (Tr. 599-600).  During 2004, plaintiff developed hypothyroidism and Graves' disease.  The latter apparently affected plaintiff's eyes.[1]  On or about the same time, plaintiff also developed bilateral ulnar neuropathy, mild central canal stenosis from T11 through L4, and mild degenerative cervical spondylitic changes.  Plaintiff applied for benefits on February 28, 2008. (Tr. 566-74). That application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ) (Tr. 15). On May 13, 2010, plaintiff appeared before ALJ William Decker with testimony offered by plaintiff and a vocational expert. (Tr. 15).  In a written decision dated June 25, 2010, the ALJ determined that plaintiff was not disabled under the Social Security Act. (Tr. 15-22). The Appeals Council declined to review the ALJ's determination. (Tr. 6).

---

[1] According to the Mayo Clinic, "Graves' disease is an immune system disorder that results in the overproduction of thyroid hormones (hyperthyroidism). Although a number of disorders may result in hyperthyroidism, Graves' disease is a common cause." Approximately thirty percent of patients with Graves' disease develop Graves' ophthalmopathy which affects muscles around the eyes. Symptoms include: bulging eyes, gritty sensation in the eyes, pressure or pain in the eyes, puffy or retracted eyelids, reddened or inflamed eyes, light sensitivity, double vision, and vision loss. *See Graves' Disease*, MAYO CLINIC, http://www.mayoclinic.org/diseases-conditions/graves-disease/basics/definition/con-20025811 (last visited on September 17, 2015).

On July 16, 2012 this court remanded the case pursuant to sentence six of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g) because a complete transcript of the May 13, 2010 hearing before the ALJ was unavailable. (Dkt. 15).[2] On remand, plaintiff appeared with his counsel before ALJ Luke Brennan on January 29, 2013 with testimony offered by plaintiff and a different vocational expert. In a written opinion dated March 1, 2013, ALJ Brennan concluded that plaintiff was disabled as of March 3, 2011. (Tr. 652-53). However, because plaintiff's insured status expired on June 30, 2009, the ALJ determined that plaintiff was not entitled to DIB benefits.[3] (Tr. 644, 652-53). Because plaintiff has already been awarded SSI benefits, the only question presented by the present appeal is the sufficiency of the ALJ's decision that plaintiff is not eligible for DIB benefits because his disability was not established until after the expiration of his insured status.

## ALJ'S DECISION

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). To aid ALJs in applying the above standard, the Commissioner of Social Security has developed a five-step analysis:

---

[2] Thereafter, plaintiff also filed a new application for SSI benefits on June 21, 2012 (Tr. 710) which was granted (Tr. 889).

[3] To be eligible for Disability Insurance Benefits under Title II of the Social Security Act, plaintiff must establish that he became disabled prior to the expiration of his insured status. *See* 42 U.S.C. § 423; *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

> The Social Security Act requires the Secretary to follow a "five step sequential process" for claims of disability. First [a] plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, [a] plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if [a] plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, [a] plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, [a] plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that [the] plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted); *see also* 20 C.F.R. §§ 404.1520(a-f).

The plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, the burden shifts to the Commissioner "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

The ALJ determined plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff had not engaged in substantial gainful activity since November 6, 2007 (Tr. 644). Second, the ALJ determined that plaintiff suffered from: (1) hyperthyroidism; (2) Graves' disease; (3) bilateral ulnar neuropathy; (4) mild central canal stenosis; and (5) mild degenerative cervical spondylitic changes, the latter three rising to the level of severe for purposes of 20 C.F.R. §§ 404.1520(c), 416.920(c) (Tr. 644). The ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of

the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Tr. 646).

With respect to plaintiff's residual functional capacity, the ALJ determined that plaintiff retained the capacity to perform light work subject to the following limitations:

> He has been able to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk two hours in an eight-hour workday; sit six hours in an eight-hour workday ; work where he can sit and/or stand as needed; and occasionally stoop, squat, kneel, climb (ramps, stairs, ladders, ropes, and scaffolds), crouch, crawl, reach bilaterally, and handle and finger bilaterally.  He can have no more than frequent exposure to hazards, including unprotected heights and moving machinery.  He can have no exposure to temperature extremes and no more than frequent exposure to humidity or wetness. He must avoid ocular irritants of dust and fumes.

(Tr. 646).  The ALJ noted that the RFC was more restrictive than that found prior to remand (Tr. 650) and concluded that plaintiff could not perform any of his past relevant work. (Tr. 650).

At the fifth step, the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964.  While the ALJ is not required to question a vocational expert on the issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden.  *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978).  This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy.  *See Richardson*, 735 F.2d at 964. Accordingly, ALJ's routinely question vocational experts in an attempt to determine whether there exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding.  Such was the case in the instant matter. The vocational expert testified that there existed approximately 5,000 jobs in the state of Michigan which a person with plaintiff's

6

residual functional capacity could perform, such limitations notwithstanding (Tr. 916-17). The vocational expert testified that this work included jobs as a production inspector, a greeter, and a parking booth cashier (Tr. 916-17). This represents a significant number of jobs. *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988).

Thus, the ALJ determined plaintiff was not disabled within the meaning of the Act. The ALJ went on to note, however, that when plaintiff turned 55 in March 3, 2011, he was reclassified into the "advanced age category" and thus would have been disabled under the application of the Medical-Vocational Rule 202.06. However because that date is after the date plaintiff was last insured, the ALJ concluded plaintiff was not entitled to disability benefits.

## ANALYSIS

Plaintiff raises several issues on appeal regarding the ALJ's decision: First, that the ALJ did not properly consider the opinions of plaintiff's treating physicians; second, that the ALJ did not have substantial evidence to support the finding that plaintiff could perform light work due to a Social Security Ruling's definition of "light work;" third, that the ALJ's opinion improperly used boilerplate language in assessing plaintiff's credibility; and fourth, that the ALJ improperly determined at step 5 that there were jobs plaintiff could perform. The court will consider each issue in turn.

### 1. The ALJ's Decision to Give Plaintiff's Treating Physicians Less than Controlling Weight is Supported by Substantial Evidence.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his

medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527).

Such deference is appropriate, however, only where the particular opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where such is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller v. Sec'y of Health and Human Services*, 1991 WL 229979 at *2 (6th Cir., Nov. 7, 1991) (citing *Shavers v. Sec'y of Health and Human Services*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)); *Cutlip v. Sec'y of Health and Human Services*, 25 F.3d 284, 286-87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply

stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Gayheart*, 710 F.3d at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527). While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 Fed. Appx. 448, 450 (5th Cir., Jan. 19, 2007). Plaintiff argues the ALJ erred in failing to give controlling weight to the opinions of both Drs. Solarewicz and Fitzgerald.

### A. Dr. Solarewicz

On April 27, 2010, Dr. Maciej Solarewicz stated that plaintiff could occasionally lift and carry ten pounds while the maximum plaintiff could lift was twenty pounds. Additionally Dr. Solarewicz stated plaintiff had limitations due to pain in his upper neck. (Tr. 537-39). Plaintiff and would need frequent breaks of five to ten minutes every two hours. (Tr. 457-58).

The ALJ gave only partial weight to Dr. Solarewicz's assessment. While noting that some of the conclusions, namely the limitations on lifting and carrying weights, were consistent with the final RFC finding, the ALJ also found other conclusions of Dr. Solarewicz not to be

9

supported by the record. Specifically, the ALJ noted:

> [T]he statement [of Dr. Solarewicz] is generally consistent with the medical evidence and the claimant's activities. However the MRI discloses only mild cervical impairment, and the MRI is not sufficient to establish postural limitations of the neck. In addition, the limitation concerning a 5 to 10 minute break every two hours is not supported by the claimant's daily activities and the medical reports of record in general.

(Tr. 649). The ALJ's conclusion in this regard is supported by substantial evidence. Dr. Solarewicz's conclusion that plaintiff could only occasionally use the full range of motion in moving his neck, for example, is at odds with the result of the September 8, 2008 MRI of plaintiff's cervical spine which showed that the "craniocervical junction is normal. The cervical spinal cord is normal in caliber and signal intensity" with an ultimate impression of "mild, early degenerative cervical spondylotic changes," but "no disk herniation or central canal stenosis." (Tr. 328-29). Plaintiff's own statements at the ALJ hearing are also in conflict with the doctor's statements. For example, at the hearing, plaintiff stated he could perform a larger range of motion, including looking down with no issue, looking to the right with almost a full range of motion, while he experienced a limited range of motion to the left. (Tr.610)

The plaintiff's own testimony regarding his daily activities demonstrate he is able to complete a limited range of light work. He states during the relevant time period he was able to clean the house, care for his dog, perform shopping, help prepare meals, and regularly walk one-half to one mile. (Tr. 908-10). The ALJ also noted that Dr. Solarewicz's treatment notes are silent as to any treatment plan detailing the necessity of five to ten minute breaks every two hours. (Tr. 649). In sum, the treatment notes of Dr. Solarewicz do not support the conclusions later reached. To the extent plaintiff's physical impairments limit his ability to perform work activities and need for breaks, such limitations are adequately accounted for in the ALJ's RFC

determination. Accordingly, the ALJ's decision to accord less than controlling weight to Solarewicz's opinion is supported by substantial evidence and are not "ambiguous" *See Gayheart*, 710 F.3d at 376-77.

### B. Dr. Fitzgerald

On November 20, 2009, Dr. Kevin Fitzgerald offered his opinion as to plaintiff's RFC. According to his opinion, as early as December 2003, plaintiff was only able to sit uninterrupted for an hour, stand and walk uninterrupted for twenty minutes each, only occasionally[4] carry weights of ten to twenty pounds, frequently[5] carry weights of five pounds, and was limited in the duration he was able to walk. (Tr. 357). As above, the ALJ gave only partial weight to Dr. Fitzgerald's opinion, writing:

> Dr. Fitzgerald noted that his reasoning to limit the claimant to less than light work was based on the claimant's self reported increased fatigue due to hyperthyroidism with thyroid removal. Dr. Fitzgerald's medical source statement additionally is not consistent with the evidence in general . . . . While Dr. Fitzgerald also based his reasoning on the claimant's degenerative disc disease and ulnar nerve conditions, the level of disability that the doctor has suggested is not supported by the medical record given the mild findings on radiographic evidence and physical examination. Dr. Fitzgerald's medical source statement, moreover, is inconsistent with the claimant's testimony that since his thyroid removal and subsequent medication, his thyroid condition has not bothered him much.

(Tr. 648-49). As above, the ALJ's conclusion in this regard is supported by substantial evidence.

As the ALJ notes, many of Dr. Fitzgerald's conclusions are based on the subjective reporting of Plaintiff regarding his thyroid condition. For example, Dr. Fitzgerald filled out a form documenting Plaintiff's capacity to perform certain functions (Tr. 357). When asked to

---

[4] Less than or equal to two hours a day

[5] Up to and including six hours a day

provide supporting documentation for limitations imposed on the length of time that Plaintiff was able to sit, stand, and walk, Dr. Fitzgerald noted Plaintiff had his thyroid removed and was on replacement therapy, but reported continued fatigue. (Tr. 357). But, as the ALJ aptly notes, Plaintiff himself has stated that the thyroid has not been much of an issue for him (Tr. 907). .

The ALJ also notes that plaintiff received results of medical evaluations that were inconsistent with the opinion of Dr. Fitzgerald. For example, Dr. Fitzgerald, in completing a medical assessment form, noted that plaintiff had a limitation in his ability to see, basing the conclusion on an examination conducted by plaintiff's ophthalmologist (Tr. 359-60). In a similar medical assessment, however, plaintiff's ophthalmologist was asked whether "any of the impairments affect the claimant's hearing or vision" and checked the box next to "no." (Tr. 374) Again, the decision of the ALJ to afford less than controlling weight to Dr. Fitzgerald's conclusions are thus supported by substantial evidence.

## 2. The ALJ's RFC Determination is Supported by Substantial Evidence.

In a short paragraph, plaintiff challenges the sufficiency of the evidence by which the ALJ found plaintiff had a residual functional capacity sufficient to perform light work and specifically argues that a social security ruling, SSR 83-10, precludes a finding that plaintiff was able to perform light work.

A plaintiff's residual functional capacity (RFC) represents his ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996); *see also Payne v. Commissioner of Social Security*, 402 Fed. Appx. 109, 116 (6th Cir., Nov. 18, 2010).

Social Security regulations and rulings state: "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or *when it involves sitting most of the time with some pushing and pulling of arm or leg controls*." (emphasis added).  20 C.F.R. § 404.1567; Titles II and XVI: Determining Capability to do Other Work - the Medical-Vocational Rules of Appendix 2, SSR 83-10, 1983 WL 31251 at *6 (S.S.A., 1983); *Van Winkle v. Commissioner of Social Security*, 29 Fed. Appx. 353, 357 (6th Cir., Feb. 6, 2002).  Plaintiff does not argue that he can not meet the lifting requirements noted above, but argues that SSR 83-10's description of light work is incompatible with the RFC prescribed by the ALJ that limited plaintiff to two hours of standing or walking during the workday.  The court is not persuaded.

While SSR 83-10 does describe light jobs as those jobs that may involve walking, plaintiff ignores the second half of the description which states that light work may involve sitting most of the time. This was the language cited in the ALJ's opinion. (*see* Tr. 652). Plaintiff fails to show how the ALJ's RFC determination does not comport with the second half of the light work definition. Rather, the court finds that the definition of "light work" in SSR 83-10 and the accompanying regulations can reasonably be interpreted as allowing for work that involves sitting most of the time.  After reviewing the ALJ's opinion and the jobs the jobs cited by the vocational expert that plaintiff would be able to accomplish (Tr. 916-17), the court finds the ALJ's RFC determination is supported by substantial evidence.

### 3. There is Substantial Evidence for the ALJ's Decision to Discount Plaintiff's Credibility.

Plaintiff next challenges the ALJ's determination that plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not credible. Specifically, plaintiff argues the ALJ improperly used "boilerplate language" in the credibility determination. While the use of boilerplate language, with nothing more, may be cause for concern, that is not the case here.

As the ALJ wrote:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible for the eight numbered reasons explained in this decision.
>
> 1) Notable, the mild radiologic finds and the absence of nerve root or spinal cord compromise, radicular elements, and neurological loss are not suggestive debilitating pain and other symptomatology. Indeed, the objective evidence only partially supports the claimant's allegations. While the radiographic and EMG evidence establishes the claimant's diagnoses, those objective studies reference only mild findings (Exhibits B5F, B12F, B21F, and B52F).
>
> 2) The claimants' daily activities support a conclusion that the claimant has been able to do at least a limited range of light work. Both the claimant and his wife completed functional reports that reveal that the claimant has been able to prepare simple meals, do household cleaning where he is not exposed to ocular irritants of dust and fumes, go shopping, socialize, watch television and movies, talk to family members over the telephone, handle financial matters, and care for his personal needs (Exhibits B5E, B6E, and B15E). The claimant acknowledged at the hearing that he does household chores, although he stated that his wife (who is disabled) does help him out. He further testified that he cares for his dog that he stated sheds every day.
>
> 3) Regarding the location, duration, and frequency of symptoms, the claimant described neck and low back pain in addition to the ulnar nerve pain. The medical evidence does not support the level of severity that the claimant has alleged. I reference again the mild findings in the objective medical evidence.

> 4) Regarding the factors that aggravate the claimant's symptoms, at the hearing the claimant indicated that moving his head, standing, walking, and lifting aggravated his pain. Given his diagnoses, this statement is deemed supported to a minimal extent and, therefore, is partially credible.
>
> 5) The claimant has been prescribed medications as set forth at Exhibits B3E/8, B9E/3, B11E, B13E/5, B18E, and B52F. Treating medical source records reflect that the claimant's symptoms can be and have generally been controlled with his medication regimen (Exhibits B36F, B48F/1, and B52F). Moreover, there is no indication in the medical evidence that the claimant has had any significant medication side effects. Notable, in March 2012, the claimant was described as having no medication side effects (Exhibit B48F/1). In addition, the claimant's medical condition is monitored by his treating medical sources. If he were to have significant side effects, his treating medical sources would alter the medication dosages or change the medications.
>
> 6) In addition to his prescribed medications, the claimant has reported that he has had some injections. There is no indication that the claimant had any complications or side effects from the injections.
>
> 7) Neither the testimony at the hearing nor the documentary evidence of record shows that the claimant has sought treatment with measures other than medical.
>
> 8) There are no other factors under 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p that suggest that the claimant's symptoms are disabling.

(Tr. 647-48). It is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Workman v. Commissioner of Social Security*, 105 Fed. Appx. 794, 801 (6th Cir., July 29, 2004) (citing *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997); *see also*, *Heston v. Commissioner of Social Security*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). Where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 Fed Appx. at 801 (citing *Walters*, 127 F.3d at 531).

In other words, it is not for this court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Commissioner of Social Security*, 540 Fed. Appx. 508, 511 (6th Cir., Oct. 4, 2013) (citation omitted).

Plaintiff attempts to overcome this high bar by arguing the ALJ's assessment was critically flawed due to "boilerplate language." The court disagrees. While the court does not dispute that the ALJ employed certain language which can fairly be characterized as "boilerplate," the use of such is not by itself grounds for relief. Practical realities necessitate that boilerplate of some kind is often employed by the ALJ, the court, as well as litigants.

A review of the ALJ's decision reveals that beyond the challenged "boilerplate" conclusion, the ALJ discussed at length the evidence of record and detailed how the medical evidence and plaintiff's own words contradicted the plaintiff's allegations, especially regarding plaintiff's assertions of debilitating pain.[6] In support of these conclusions, the ALJ cites to treatment notes from plaintiff's visits to Michigan Primary Care Partners, one of which states, regarding plaintiff's neck, that it was "[s]upple with [a] good range of motion. No thyroid tenderness or enlargement. No lymphadenopathy." (Tr. 210)." On another occasion plaintiff complained of a "prickly feeling" around a previously treated site on his thigh. Upon physical examination, however, the treating physician found that the "incision is completely healed.

---

[6] For example, at the hearing before the ALJ, plaintiff placed his level of pain at a 5 or 6 on a scale of 1-10, even with the aid of medication, and asserted that his pain experience is often higher (Tr. 902).

There are no signs of inflammation. There is no fluid collection underneath the skin." (Tr. 264). Furthermore the ALJ noted that the results of a March 2007 MRI showing only "very mild degenerative changes" (Tr. 217) and other test results showing no spine fractures (Tr. 219). Another MRI of plaintiff's right hip revealed only "minimal myositis/muscle strain" and "[m]inimal osteoarthritis of the right hip" (Tr. 215). Plaintiff's medications were also examined by the ALJ, and the ALJ noted the absence of reported side effects from the treatment notes of plaintiff's physicians (Tr. 648, *citing* Tr. 520, 527-28, 817). The ALJ also noted the plaintiff's own account of his daily activities, which included preparing meals, cleaning the house, shopping, watch movies and television, taking care of his dog, and caring for his personal hygiene (Tr. 133-39, 141-47).

In sum, the ALJ articulated legitimate reasons for discounting plaintiff's credibility, and those reasons are supported by substantial evidenced. Accordingly, plaintiff's argument on this issue is rejected.

### 4. The ALJ's RFC Hypothetical Posed to the Vocational Expert was Supported by Substantial Evidence.

Finally, plaintiff argues that the ALJ's analysis at step five was flawed because the ALJ should have found there were no available jobs. That is, plaintiff argues the RFC hypothetical under which the vocational expert stated there were 5,000 local jobs was without substantial evidence and that the ALJ should have used the answer the vocational expert gave under the hypothetical RFC as determined by plaintiff's treating physicians. While the ALJ may satisfy his burden at step five through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments. *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

But plaintiff fails to argue in any respect how the RFC hypothetical used by the ALJ was deficient, rather it restates the arguments already covered *supra* and baldly states, with nothing more, that the RFC determination used in the hypothetical was without substantial evidence. The court has already found the ALJ's RFC determination to be supported by substantial evidence. Plaintiff offers nothing here to change the court's mind. Accordingly the plaintiff's argument on this point is rejected.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **AFFIRMED**.  A judgment shall issue.


Dated:  September 23, 2015                                           /s/ Ellen S. Carmody
                                                                    ELLEN S. CARMODY
                                                                    United States Magistrate Judge